Good afternoon, your honors. I may please the court, Gregory Dubinsky, on behalf of the petitioner Gutierrez-Cupido. With the court's permission, I'll reserve two minutes of my time for the rebuttal. This case calls for a straightforward application of the court's the court clearly stated that where fairness demands that noncompliance with the filing deadlines of an immigration court be excused, the agency has the inherent discretion to depart from the letter of the rules, and that that discretion includes the inherent power to disregard the deadlines imposed by the local rules. The court also emphasized that it is a matter of concern when the agency's strict adherence to the established time limit prevents the petitioner from presenting his case. The court instructed the agency to consider in the exercise of its informed discretion whether a departure from the deadline is warranted where an alien has demonstrated good cause for the failure to timely file in a likelihood of substantial prejudice. Notwithstanding that clear rule, the Board of Immigration Appeals in this case followed that clear statement in its decision, citing a Board of Immigration Appeals case from 1992, 16 years before the court set forth its clear rule in DEGI. The Board of Immigration Appeals stated that if an application is not filed within the time set by the immigration judge, the opportunity shall be deemed waived and did not cite at all the court's repeated emphasis that the agency is empowered to and should indeed consider whether departures from the deadline are warranted where there is good cause and likely prejudice. That is clearly the case here. Indeed, the good cause for a continuance and extension of the filing deadline is as manifest as it is compelling. The good cause in this case rests on the simple and undisputed fact that my client learned on the day that his asylum application was due that his attorney, whom he had been relying upon to file his application, was permitted to withdraw. So there is a little wrinkle in the record here. The government and my client's counsel represented that the initial counsel filed his motion to withdraw on the day of the deadline, which was August 20th, 2018. The record actually indicates that he may have filed his motion to withdraw on the 15th of August. But regardless, it is undisputed that my client learned for the first time because the order granting the motion was served on the day of the deadline. So it's undisputed for purposes of this case that my client was not aware that his attorney was permitted to withdraw until the day of the deadline. Now, the Supreme Court in Begos v. Thomas has clearly stated that a client cannot be faulted for not acting on his own behalf when he lacks reason to know that his attorneys of record are not in fact representing him. And that's what occurred here. Now, to belabor the obvious, it was impossible as a practical matter for my client to either file pro se an asylum application on the 20th once he learned that his attorney had withdrawn, or to move for an extension, or even to retain new counsel. But that's exactly what the immigration judge in this case faulted him for. In his oral decision, refusing to reconsider his earlier decision finding that my client has abandoned his application for not filing, the immigration judge stated that my client failed to even ask for an extension of time justifying why the application was not filed, or why additional time would be needed. But of course, it was impossible as a practical matter for him to do so. The immigration judge flagrantly overlooked, in our view, the compelling good cause that my client had for not filing on time. Heaping error upon error, the Board of Immigration Appeals further affirmed the immigration judge's denial of my client's subsequent counsel, who was retained after the filing deadline, his motion for a continuance so that he could, quote, adequately prepare the asylum application. And the Board of Immigration Appeals construed that motion for continuance as a request for time to respond to the government later in time, a motion for a finding of abandonment. But in fact, that motion was a motion for time to prepare the asylum application. So the errors, in our view, in this case, are plain. The Board of Immigration Appeals flatly failed to recognize controlling Second Circuit law. It did not consider at all the question of whether there was good cause for a departure from the filing deadline, even though my client's counsel put that issue squarely before the Board of Immigration Appeals. And at 814, the counsel, in the brief to the Board of Immigration Appeals, cited this court's law, setting forth that the question that is relevant is whether there is a good cause for the delay, and then argued that my client, quote, had good cause for his delay in filing his asylum application. But the Board refused to consider those issues and recognize the agency's authority to consider those issues. And the government's arguments to the contrary, in our view, are completely unavailing. The government doubles down on the agency's error by saying that the government, excuse me, that it is mandatory rather than discretionary for the immigration court to enforce a filing deadline when an applicant does not timely file. But of course, that runs squarely into the case law we've discussed. The government argues that my client was required to file an ineffective assistance of counsel claim in order to obtain relief under DEGI, but that's nowhere in this court's case law, nor does it make sense as a logical or legal matter. The question of set forth in DEGI is whether there's good cause for an extension of the deadline. That does not require a finding that my client's first counsel rendered ineffective assistance, merely that my client was reasonable in relying on his counsel to represent him up until such time as his motion to withdraw was granted. And of course, to reiterate, that's a matter of bedrock, black letter, first principles. This court has recognized that. The immigration court handbook recognizes that. And so we think that the government's argument on this point are unavailing. So with that, I've spoken for a bit of time. I'll welcome any questions from the court. Thank you. Thank you very much. Judge Park. Yes. Counsel, Mr. Millett didn't request an extension of the August 20 deadline until October. It's like it was six weeks later. What's the explanation for that? That seems to be a different situation than as soon as he comes on, he recognizes what happens and asks for an extension, which might be more sympathetic. I think, Your Honor, that's answered by the fact that Millett was retained on September 6, 2018, so after the deadline. And he moved promptly for a continuance on the 11th of September, so just five days or so after he was retained. And he later represented the court that he was aware of the filing deadline because previous counsel had not communicated that to him and that my client may not have understood that. But the reason for... So first of all, I think we would dispute that there was a meaningful delay in requesting an extension. It came five days after subsequent counsel was retained. And in any event, what the government argued in its notion for a finding of abandonment was that my client had already abandoned his application at the time he missed the filing deadline. And so anything that occurred after August 20 was not relevant for that question. And I think I saw that Mr. Izzereri claimed to have given notice of his Is that right or is that not correct? The only basis I would see in the record for that would be the motion to withdraw counsel that Mr. Izzereri filed. But all he said in that, and that's A-143, all he said in that motion was that irreconcilable differences have arisen and the lines of communication have... This caused the lines of communication to break down for the attorney-client relationship to be irreparably broken. But it doesn't state anywhere in there that there was any discussion of any intention by the counsel to move to withdraw. But even if there were, assuming arguendo, which I don't think the record supports, even if there were such communication and even had the motion to withdraw been filed earlier, I think the key question here is when my client learned that the lawyer was permitted to withdraw. Because to repeat it, the black letter principle is that until such time as you're permitted to withdraw, you've got to continue to represent your client's best interests. So I think it's eminently reasonable in light of principles this court has articulated and principles in the immigration court practice handbook for my client to have relied on Mr. Izzereri to represent him. Okay. Thank you. Judge Nardini. Yes. I have a question. Can you tell me the argument that you're making now where it was raised before the agency? And I'll tell you, I'm concerned there seems to be a mismatch. And I think, frankly, you're improving the argument and your client would have been well served if it was raised below. But I don't think it was that, as you're saying, your client had good cause for delay because he received the notice of the attorney's withdrawal, as you contend at least, when it was too late to do anything. But I thought that the argument presented to the agency was that your client was not aware of the back and said, no, no. The client was there the day we announced the deadline. So can you just tell me if I'm wrong and there's not a mismatch? So, your honor, I don't think there's a mismatch and I'll just explain why I think that's the case. I think your honor is correct that before the immigration judge, that was the focus of the immigration appeals. If you look at A13 through 14, that's the brief, the counsel for my client at that time stated, he cited this court's decision in Macarena v. Sessions, which I think in turn references is Deji. And in that case, I think there was a finding that there was no good cause for a delay. And I think counsel squarely put the issues that we're discussing in front of the agency and fulfilled any exhaustion requirement because the counsel wrote, in this case, however, respondent had good cause for his delay in filing his asylum application. Respondent's relationship with his prior counsel broke down and prior counsel moved to withdraw the same day as the application was due. And so I think that's a reference, by the way, your honors to that point discussed earlier where there's a wrinkle in the record in both the government and the previous counsel appear to have the understanding that the motion to withdraw was filed on the 20th. But the, you know, of course, the issue is when my client learned of the withdrawal being granted. And so I don't think that wrinkle at all takes away from the fact that this issue of when, you know, my client learned of his lawyer's withdrawal was, you know, was put squarely before the agency. And I think, you know, under clear, exhausting jurisprudence that this court has set forth in the cases I discussed in my brief, you know, the court has never held a petitioner to the court exact contours of his argument for the agency. The question is, I think, more than basically a fair notice. And here, I think the issue is squarely teed up. And in this case, where the board has issued an opinion, of course, the court should look to the board's opinion. I would also- Of course. The pages you directed us to are pages 13 and 14. Is that a certified administrative record? That's correct, your honor. Thank you. Now, that's all I needed to know. Thank you. Okay. Is there any reserve time? Yes, your honor. I'd like to reserve two minutes, please. Okay. Who is this? Counsel for Gutierrez-Cupido? Yes, sir. Okay. Why don't you proceed? I'm sorry, Judge. This is the courtroom deputy. Yes, he reserved two minutes. And now we'll all hear Mr. Matthew Glover for the government, Judge. Oh, sorry. Sorry for that. Yes. The respondent. Good afternoon. May I proceed, your honor? Yes, please. Thank you. May it please the court, I'm Matthew Glover, and I represent respondent, the attorney general. At the outset, I'd like to express my condolences to the court on the passing of Judge Winter. Judge Winter made incredible and considerable contributions to the law, both as a professor in the areas of antitrust incorporations and as a member of this court. I had the pleasure meeting him once and found him to be brilliant, thoughtful, and warm. And so I understand it must be a great loss. And I'm very sorry for the court and the panel members lost. Turning to the matter at hand, against the backdrop of both the deaf, friendship, abuse of discretion standard, and the wide latitude that's afforded immigration judges in calendar management decisions, the Board of Immigration Appeals did not abuse its discretion when dismissing petitioners appeal of the immigration judge's decision to deny a continuance and deem relief abandoned. Here, the board's decision responded to the arguments that were placed before it and the record that was placed before it. And this court has long recognized that the board and the IJ don't need to mention every argument or every piece of evidence to have considered it, rather the court presumes that an IJ or the board has taken into account all the evidence before him or her, unless the record compellingly suggests otherwise. The board did petitioners lack of good cause in its ruling. I realize the ruling, you know, is a single page with the signing onto the next page of AR3. But the board in that, I guess, fourth paragraph down, the bottom paragraph of AR3, says that the immigration judge was well within its authority to rule immediately that the respondent's relief application was abandoned when it wasn't timely filed and counsel didn't show good cause for continuance to allow him to respond. Now, my friend on the other side has suggested that the board is keeping errors upon errors by saying that he was taking continuance to respond to that motion. But if you look at the pages he just cited in response to a question from Judge Nardini, which is Administrative Record 13 and 14, in petitioner's brief below to the board, the second ground of error, Roman 2, Part B, the IJ erred by granting DHS's motion to deem respondent's request for relief abandoned. At the end of the first paragraph, it says respondent was not given time to respond to DHS's motion. Instead, the And so he framed it in terms of you shouldn't have granted the motion to deem the relief abandoned without allowing a response. If you look at the first page of his brief on appeal, he says the same thing. The IJ also erred by granting DHS's motion to deem respondent's request for relief abandoned before providing respondent an opportunity to respond. And then in the argument section, when he's got sort of an opening summary of argument before, it's after Roman 2, but before A, you know, the second sentence, the IJ also erred by granting the motion to deem respondent's request abandoned before providing an opportunity to reply. And so the BIA may have used the term continuance there when the first argument was about continuance, but it's talking about his argument here that you shouldn't have deemed the relief abandoned without letting him respond to the government's motion. And as to good cause, in that same cited matter of LABR, which is a decision that sets out the factors for good cause. So that's a quick response to a point that Petitioner made. I'd also like to make a quick response to a statement that Judge Park made or in questioning my friend on the other side. Judge Park, I think it's AR 144 that you were thinking about where I'm going to butcher the to withdraw on the September 15th to both the petitioner and the government. Now, we only have the copy that was hand delivered to the government. It's stamped as having been received that day, but he did cross out the 13th. So it seems he must have drafted it on the 13th or been using something and wrote September 15th. So just a quick point on that. Otherwise, as to Deji, this court in Deji was very clear that it was holding that on the facts presented there, it was error for the agency not to have considered the opportunity to grant an extension. Here, the IJ clearly considered whether or not he could grant an extension because he discussed good cause in the October 3rd hearing when he was asked to reconsider. I believe that's at AR 102, citing some cases. And the BIA pointed out that in its footnote, in its decision that the respondent hadn't submitted any actual evidence to show that he was unaware of the August 20th for why there was good cause. And I think as an overarching point, again, against the backdrop that the IJ has broad discretion to manage its docket, that the BIA is applying abusive discretion to the IJ and that this court's applying abusive discretion review. The board's footnote is helpful because in pointing to matter of Lozado, it provides an opportunity for us to see how one would get that evidence before the court and why the Lozado mechanism is effective. If petitioner believes that his counsel was going to file the application on the 20th, and he didn't know, or the counsel told him he was going to file the application on August 20th, that might be malpractice or significant professional responsibility error by the first counsel. And that's the sort of thing that would be ineffective assistance and might excuse the failure to file on time. And Lozado provides a mechanism for doing that. And petitioner could at the time he sought review from the board, instead sought from the IJ a motion to reopen, providing the evidence required by Lozado. And we laid that out in a footnote in our brief, I think on page 18, sort of with some bullet points about what Lozado requires. You need an affidavit so that it's evidence that describes what the agreement was with counsel, and their petitioner could have provided the evidence regarding what he believed was going to happen on August 20th, or why he didn't know there was a deadline of August 20th. And then you give counsel a chance to respond so that you can determine whether or not petitioner is accurate, or whether counsel has additional evidence for why he wasn't ineffective. And so I think, again, I would just reiterate that the Lozado procedures were available to develop the record. But here, the board was looking, as was the IJ, at a record that didn't have a lot of evidence. And on the evidence before it, we don't think that the board commit an abuse of discretion. With that, I'm happy to take the court's questions. Great. Judge Park. Yes. Counsel, could you explain again how you would have us apply DEGI to this case, that it's limited to context, or an IJ fails to consider a good cause? Is that kind of the approach you would have us take? Yes. I understand DEGI. And if you'll give me a rise. Maybe I don't have it in hand. You know, in explaining its holding at page 525F3191, DEGI was clear that we hold, in the particular circumstances presented here, the IJ had discretion to deviate from the filing deadlines in the local rule, and its failure to recognize he possessed that discretion was error. And it went through an analysis of why there was likely good cause there, and it was prejudicial not to have considered it in DEGI, as both parties have had a fight that prevented the counsel from putting evidence in, and some of that evidence may have been effective. Here, we have to start with that first point that, you know, in the circumstances provided, was it error for the IJ not to consider the authority to deviate? And I think, again, I believe it's AR144 that I cited, which is the October 3rd hearing, responding to petitioner's request. He was responding below, but he's a petitioner here, so I'll stick with petitioner if that's all right with the court. But responding to petitioner's request that the IJ reconsider the ruling to find abandonment, the IJ made clear, like, here's some cases about good cause and when we would extend. And petitioner pointed to one of those cases that was cited at page AR14 in his brief to the board. He was discussing that case in the brief to the board because the IJ cited it to him at the hearing, and as petitioner pointed out, that case cites DEGI, so I don't think it's fair to say on this record that the IJ acted the way that the IJ did in DEGI, which is just failing to recognize that he had the authority or the discretion to deviate from the rules. And as for the board, if I could just repeat, if I could take a second, for the board, as I mentioned, cited matter of LABR, which, again, sets a good cause for giving an extension. Sorry. I have no questions. Thank you. All right. Any time left? Yes, your honor. I think two minutes. So very quickly, I think several points. The errors I think in this case are quite plain. So first of all, the Board of Immigration Appeals simply disregarded and flouted, in our view, DEGI. It stated that if an application is not filed within the time set by the immigration judge, the opportunity shall be deemed waived. That is directly in opposition to what this court stated in DEGI. In saying that, the Board of Immigration Appeals cited a 1992 case, 16 years before DEGI. DEGI squarely says that the agency does have discretion to depart in appropriate circumstances. So we think this court should ensure that an executive agency is following squarely on point second circuit law. Second, there's no, I think, doubt in our view that counsel squarely raised the question of DEGI and good cause for an extension. On page 814 of the brief, counsel stated that respondent had good cause for his delay in filing his asylum application and noted the timing of the motion to withdraw and its granting and a second circuit decision, which in turn cited DEGI. So third, on the question of the motion for a continuance, we think my friend on the other side is just slightly wrong, respectfully. On page 812 of the certified administrative record, that's the brief before the Board, respondent, he said that he was only seeking, seeking only a brief continuance to adequately prepare his client's asylum case after his previous counsel withdrew. And indeed, the laws of space and time support this in the sense that the motion for continuance was filed on September 11th, but the motion for a finding of abandonment was filed on, I think it was September 19th. So it could not have been filed in order to seek more time to respond to the government's motion. And indeed, the question of not having time to respond to the motion was simply a reference to the fact that although the local rules call for, you know, time to respond to motions, the immigration judge granted the motion the next day without hearing at all from my client's counsel. So that's flatly wrong. So it's true that the argument before the immigration judge focused on a lack of understanding by my client about the deadline, but the judge himself referenced the motion to withdraw by Irizarry and has separately indicated his understanding that lawyers who are in need to withdraw are required to represent their client's best interest until the motion is granted, but inexplicably failed to apply that same principle to Mr. Irizarry. He also stated at 870 that the court is left with no alternative and faulted my client for not providing an explanation for why he missed the deadline or asking for an extension of time, which of course overlooks the circumstances in this case. So we think it's far from clear that the immigration judge actually even applied DEGI or did so correctly. But in any event, and I'll we don't think that even if the agency had considered all these issues, it would be within the range of permissible decisions for the agency to refuse to grant an extension where a petitioner learns on the day of the asylum application deadline that his lawyer has been permitted to withdraw. With that, your honors, thank you very much. I'll rest my case. Thank you. Thank you very much. And we'll reserve the session.